LAWSON, APPELLANT, v. COBBAN ET AL., RESPONDENTS.

(No. 2,581.)

(Submitted December 16, 1908. Decided January 18, 1909.)

[99 Pac. 128.]

*Public Policy—Executors and Administrators—Real Property—Contracts of Sale—Future Conveyance.*

Real Property—Contract of Sale—Future Conveyance—Administrators—Public Policy.

　　1.　An agreement signed by one as administrator of an estate, and two others, to convey for a valuable consideration, at a future date, real estate not then owned by them, but belonging to the estate represented by the administrator, is not void as against public policy.

Contracts—Construction—Public Policy.

　　2.　Courts will not declare a contract void as against public policy, if by any reasonable construction it can be upheld.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Mathilda Lawson against W. S. Cobban and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with directions.

*Mr. M. P. Gilchrist,* for Appellant.

*Messrs. Lamb & Walker,* for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

The district court of Silver Bow county sustained a general demurrer to the complaint in this case, which is an action for damages for breach of an executory contract for the sale of real estate, and, in default of further pleading by the plaintiff, entered judgment for the defendants. From that judgment an appeal is taken.

The point to be decided is whether a written agreement by one who signed his name "T. J. Lynde, Adm. Estate of Mary A. Black," and two others, to convey at a future date real estate

not owned by them, but belonging to the estate represented by the administrator, said agreement being founded upon a valuable consideration, i. e., part payment of the purchase price, is void and unenforceable, as against public policy. Professor Page, in his work on Contracts (section 326), says: "Contracts are against public policy when they tend to injure the state or the public. 'Public policy is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.'" Many cases are cited by counsel for the respondents which hold that illegal or immoral contracts will not be enforced. Those cases are not in point here. There was nothing immoral or illegal about this contract. Laymen, as well as lawyers, know that property belonging to the estate of a dead man can be lawfully sold and conveyed by complying with the law governing the procedure in such cases, and that it descends to those entitled thereto if not so sold. The contract in this case cannot be construed as an agreement to convey without an order of court. A man can, for a consideration, bind himself by a contract to convey property which he does not own at the time of making the contract. If the parties intend in good faith to carry out the terms of the contract (and there is nothing in the complaint in this case to negative such intention), and not merely to wager on the price of the subject matter at a future date, the fact that the obligors do not at the time of the execution of the contract own the property will not prevent the injured party from maintaining an action for its breach. It is matter of common knowledge that men speculate in real estate, and that persons engaged in the real estate business agree, in their own names, and bind themselves, to convey the property of others. It is to be presumed that before entering into such contracts they make reasonably sure, by agreements with owners or otherwise, that they will be able to get title, or, at least, that the property will be on the market before they are obliged to perform. There is nothing in the complaint in this case to indicate that there was any notion in the minds of the parties of defrauding the

estate.    Courts are reluctant to declare contracts void as against public policy, and will refuse to do so if by any reasonable construction the contract can be upheld.    A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done, without violating the intention of the parties.    (Revised Codes, sec. 5032.)

In the case of *Montana Min. Co.* v. *St. Louis Min. Co.,* 20 Mont. 394, 51 Pac. 824, it was held that an agreement to convey to an adverse claimant a portion of the ground in dispute after patent had been obtained from the United States, was enforceable in equity and not against public policy.    "A contract is not invalid, nor is the promisor discharged, merely because it turns out to be difficult, unreasonable, dangerous, or burdensome.    Thus one who sells goods to be delivered at a certain time cannot excuse himself by saying that he expected to buy the goods, but could not."    (9 Cyc. 625; see, also, *Beebe* v. *Johnson,* 19 Wend. (N. Y.) 500, 32 Am. Dec. 518.)

In the case of *Arentsen* v. *Moreland,* 122 Wis. 167, 106 Am. St. Rep. 951, 99 N. W. 790, 65 L. R. A. 973, the late Chief Justice Cassoday, speaking for the court, said: "The authorities, both English and American, are to the effect that a vendor who agrees to convey what he at the time knows that he has no right to convey, because the title is in another, thereby assumes the risk of acquiring the title and making the conveyance, or responding in damages for the vendee's loss of the bargain.    As aptly stated by Judge Cooley: ' * * * Such contracts are speculative in character, and the party giving them understands the risk he assumes when the covenant is entered into.'    Such contracts for the future delivery of personal property have frequently been characterized by this and other courts as speculative in character.    * * * One of the definitions of 'speculate' is to 'take the risk of loss in view of possible gain.'    (Century Dictionary.)"

Of course, the administrator may not personally profit from the estate, but this does not affect the *status* of the obligee in

the contract. The defendants in this case may have been acting for, or in conjunction with, the heirs to the estate, or they may themselves have been heirs. A contract may be explained by reference to the circumstances under which it was made or the matter to which it relates; (Revised Codes, sec. 5036.)

The complaint shows that two contracts were signed contemporaneously. One was signed, "T. J. Lynde, Adm. Estate of Mary A. Black"; the other, "T. J. Lynde. W. S. Cobban. Hayes Cannon." It appears to us, therefore, that the words "Adm. Estate of Mary A. Black" may have been merely descriptive, and that Lynde was not acting in a representative capacity. (See 2 Page on Contracts, sec. 1148.) There is an allegation in the complaint that the defendants were acting "in their personal capacity." There is no express allegation that Lynde was acting in a representative capacity, and we think it may be gathered from the entire complaint that plaintiff intended to aver that he, also, was acting in his personal capacity. But, if we assume that he was acting as administrator, the result in this case is the same. The complaint alleges that Lynde died leaving no estate whatsoever, and therefore no proceedings were ever had looking to the appointment of a personal representative. In the case of *Bauerle* v. *Long*, 187 Ill. 475, 58 N. E. 458, 52 L. R. A. 643, cited by respondents, it was held that an executor, authorized by the will to sell real estate, had no implied power to bind the estate by warranty deed, but only to convey whatever title the testator had, and hence no action could be maintained against him in his *representative* capacity for breach of an executory contract to make a warranty deed. The defendants in that case were sued in their representative capacity. In this case the administrator was not sued at all, his co-obligors being the only defendants.

In the case last referred to the court makes, with approval, the following quotations: "In *Vincent* v. *Morrison*, Breese (Ill.), 227, the administrators undertook to covenant, in a deed of land sold to pay debts of their intestate, that the land was free from encumbrances, and the court say (page 231): 'In relation to

covenants the general rule is that an administrator has no power to charge the effects of the intestate by any contract originating with himself, and it seems from the current of decisions that his contracts in the course of his administration, or for the debts of his intestate render him liable *de bonis propriis'*—citing *Sumner* v. *Williams,* 8 Mass. 162, 5 Am. Dec. 83.

"In *Mason* v. *Caldwell,* 5 Gilm. (Ill.) 196 (48 Am. Dec. 330), the court say (page 207) : 'If an administrator or guardian, in his representative capacity, makes a contract or covenant which he has no right to make, and which is not binding upon the estate or ward, he is bound personally to make it good. The rule is well settled that an executory contract of an executor or administrator, if made on a new and independent consideration moving between the promisee and the promisor, is his personal contract, and does not, in the absence of authority given by statute or by will of the decedent, bind the estate.' (11 Am. & Eng. Ency. of Law, 2d ed., p. 932, citing numerous cases.)

"In *Austin* v. *Munro,* 47 N. Y. 360, it is said : 'The rule must be regarded as well settled that the contracts of executors, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, as for services rendered, goods or property sold or delivered, or other consideration moving between the promisee and the executors as promisors, are the personal contracts of the executors and do not bind the estate, notwithstanding the services rendered or goods and property furnished, or other consideration moving from the promisee, are such that the executors could properly have paid for the same from the assets and been allowed for the expenditure in the settlement of their accounts. The principle is that an executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator. (*Ferrin* v. *Myrick,* 41 N. Y. 315; *Reynolds* v. *Reynolds,* 3 Wend. (N. Y.) 244; *Demott* v. *Field,* 7 Cow. (N. Y.) 58; *Myer* v. *Cole,* 12 Johns. (N. Y.) 349.) The rule is too well established in this

state to be questioned or disregarded, and any departure from it would be mischievous.' "  See, also, 2 Page on Contracts, sec. 995, where the author says: "Executors are liable personally upon contracts which they attempt to make in their official capacity when they cannot bind the estate, unless they speci-. fically contract against a personal liability"—and cases cited.

The judgment of the district court is reversed, and the cause is remanded, with directions to overrule the demurrer.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.