THE HON. WILLIAM L. HOLLOWAY, ⎫
⎬ Associate Justices.
THE HON. SYDNEY SANNER, ⎭

---

KINSMAN, APPELLANT, *v.* STANHOPE, RESPONDENT.

(No. 3,427.)

(Submitted November 10, 1914. Decided December 1, 1914.)

[144 Pac. 1083.]

*Conversion — Counterclaim — Novation — Written Contracts— Change in—Parol Testimony—Inadmissibility—Chattel Mortgages—Power of Sale—Who may Sell Property.*

Conversion—Showing Necessary by Plaintiff.

1. In an action for damages for conversion, plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary, and must show a general or special ownership in and the right to immediate possession of the property at the time of the taking by defendant.

[As to title on which trover is maintainable, see note in 1 Am. Dec. 585.].

Same—Counterclaim—Purchase Price.

2. Defendant, who was sued for the conversion of an automobile taken under a chattel mortgage given him to secure the purchase price, could properly counterclaim for the balance of the purchase price.

Novation—Definition.

3. Novation results by the substitution of a new obligation for another, with intent to extinguish the old one.

(41)

What Does not Constitute Novation.

    4. *Held,* under the rule above, that where plaintiff purchased an automobile from defendant giving a chattel mortgage to secure the unpaid purchase money, a subsequent agreement that plaintiff should run the automobile for hire and turn over to defendant all moneys received until the balance due on the purchase price should be fully paid, did not work a novation.

    [As to waiving tort and suing in *assumpsit,* see note in Ann. Cas. 1913D, 231.]

Written Contracts—Change in—Parol Testimony—Inadmissibility.

    5. Under section 5067, Revised Codes, an agreement resting in parol and not fully executed could not alter a prior written contract, and was therefore properly excluded from evidence.

Chattel Mortgages—Foreclosure—Power of Sale.

    6. Under section 5742, Revised Codes, providing that a power of sale may be conferred by a mortgage upon the mortgagee or any other person, the mortgagee may execute the power without calling upon the sheriff to make the sale, such officer not being given exclusive power.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by James H. Kinsman against L. H. Stanhope. From a judgment for defendant and an order denying new trial, plaintiff appeals. Affirmed.

*Mr. W. A. Jackson* and *Mr. A. C. McDaniel,* for Appellant, submitted a brief; *Mr. Jackson* argued the cause orally.

The appellant takes the position that the counterclaim must arise out of the transaction set forth in the complaint, or be connected with the subject of the action, and that the counterclaim here does not fall within either provision of section 6541, Revised Codes. (See *Collier* v. *Ervin,* 3 Mont. 142; *Osmers* v. *Furey,* 32 Mont. 581, 81 Pac. 345; *Davis* v. *Frederick,* 6 Mont. 300, 12 Pac. 664.)

The complaint is in tort, the counterclaim in contract; hence, the counterclaim cannot fall within section 6541. A claim for the use and occupation of land wrongfully taken from the possession of claimant and for the conversion of personalty cannot be used as a setoff against a mortgage. (*Rogers* v. *Watson,* 81 Tex. 400, 17 S. W. 29.) Where the complaint charges the wrongful conversion of the proceeds of goods sold by defendant on commission, the tort is the subject of the action, and sole

foundation of the plaintiff's claim. (*Scheunert* v. *Kaehler,* 23 Wis. 523; see, also, *Tallman* v. *Barnes,* 54 Wis. 181, 11 N. W. 478; *Moyle* v. *Porter,* 51 Cal. 639.)   In an action for taking and carrying away certain goods, the defendant set up in his answer that he held a chattel mortgage on the goods, and that default having been made, he took possession of the goods, but that plaintiff had previously secreted and removed part of the same; that it was afterward discovered that the plaintiff did not own part of the goods taken by the defendant, and that they were taken away from the defendant by the real owner, whereby he sustained loss to a specified amount for which amount he demanded judgment.   It was held that as the proposed counterclaim was not connected with the trespass upon which the plaintiff relied and did not arise out of the transaction set forth in the complaint, it was not admissible. (*Chamboret* v. *Cagney,* 10 Abb. (n. s.) 31, 41 How. Pr. 125.)

The counterclaim does not state facts sufficient to constitute a cause of action; it affirmatively shows that the defendant did not comply with section 5769, Revised Codes.   The point made by appellant is that the sheriff is the only person who can sell mortgaged personal property, and that the mortgagee has no such right.   The mortgagor may confer on the mortgagee the power to sell, but the sheriff only can execute that power.   Counsel for appellant have been unable to find a statute from another state similar to section 5769.   The statute of Idaho is different from that of Montana, but the case of *Rein* v. *Callaway,* 7 Idaho, 634, 65 Pac. 63, may be cited with propriety here.

The court erred in sustaining the objection of defendant to the introduction by plaintiff of evidence of discharge of note and mortgage, and in sustaining objection to the offer of proof of same.   It was not the purpose of the plaintiff at the trial to prove the alteration of a written agreement by parol evidence, but to prove the substitution of one contract for another, the second contract taking the place of the first contract and entirely annulling it.   This may be done whether the second contract was written or oral.   This is what was alleged in the reply and what

was offered to be proved at the trial. In other words, a contract may be discharged by a new contract taking the place of the first contract. The present case is not one of alteration, but of novation, the substitution of one contract for another, the discharge of one contract by a subsequent contract. (*Adler* v. *Friedman*, 16 Cal. 138; *Sutter* v. *Moore Inv. Co.*, 30 Wash. 333, 70 Pac. 746; *Bryant* v. *Thesing*, 46 Neb. 244, 64 N. W. 967; *Illinois Life Ins. Co.* v. *Benner*, 78 Kan. 511, 97 Pac. 438; *Pennsylvania Min. Co.* v. *Brady*, 14 Mich. 260, 16 Mich. 332; *Bandman* v. *Finn*, 185 N. Y. 508, 12 L. R. A. (n. s.) 1134, 78 N. E. 175; *White* v. *Walker*, 31 Ill. 422; *Pecos Valley Bank* v. *Evans etc. Co.*, 107 Fed. 654, 46 C. C. A. 534.)

*Mr. Lewis A. Smith*, for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In April, 1910, James H. Kinsman purchased an automobile from L. H. Stanhope, for which he paid $1,000 in cash, and executed his note, secured by a chattel mortgage upon the machine, for the balance, amounting to $1,700. The chattel mortgage contained the usual provisions authorizing the mortgagee to take possession in case of default in the payment of the note or the happening of any one of three or more other contingencies. In the complaint in this action the plaintiff alleges his ownership of the automobile, his right to the possession of it, and that defendant wrongfully took and converted it to his own use, to plaintiff's damage in the sum of $2,700. The answer consists of a general denial, an affirmative defense in which defendant justifies the taking and selling of the machine under the chattel mortgage for default in the payment of the note, and finally a counterclaim for the balance due on the purchase price of the machine. By reply the plaintiff admits the execution and delivery of the note and chattel mortgage, and that no part of the note has been paid. He then alleges that, on the same day the

note and mortgage were executed, and after the delivery thereof, he and defendant entered into a new agreement, by the terms of which defendant undertook to pay the running expenses, repairs and garage charges of the automobile in question, and to pay plaintiff's living expenses, in consideration that plaintiff should employ the automobile in rent service and turn over to the defendant all moneys so received until the $1,700, balance upon the purchase price, should be fully paid. He alleges that he entered upon the performance of this new agreement and paid over to the defendant $754 pursuant to its terms; that he was thereafter ready and willing to continue such performance, but that defendant, about June 25, 1910, refused further performance on his part, and refused to permit plaintiff to proceed. At the trial plaintiff offered evidence of his ownership of the automobile, its seizure and sale by the defendant, and his resulting damages. Defendant offered evidence of his seizure and sale of the machine under the chattel mortgage and of the balance due him upon the purchase price. In rebuttal, plaintiff offered to prove the subsequent agreement set forth in his reply, but when he admitted that such agreement was in parol, the court excluded the offered evidence and directed a verdict in favor of the defendant for the amount of his counterclaim, and judgment followed accordingly. Plaintiff has appealed from the judgment and from an order denying him a new trial.

1. It is insisted that, since the plaintiff's action for damages for conversion sounded in tort, a counterclaim for the balance of the purchase price founded in contract and which, it is further contended, does not arise out of the transaction set forth in the complaint, and is not connected with the subject of plaintiff's action, is not such a counterclaim as is permitted by section [1] 6541 of the Revised Codes. In an action for damages for the conversion of personal property, plaintiff "must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary." (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884.) It is incumbent upon him to show a general or special ownership in the chattel and a right to its immediate

possession at the time of the taking by the defendant. (*Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302.) To meet the requirements of these rules, plaintiff alleges that, at the time the defendant seized the automobile, he (plaintiff) was "in the immediate possession of, and entitled to the possession of, said property"; but the admissions in his reply amplify his former pleading, so that, in effect, his complaint charges that, at the time defendant seized the automobile, plaintiff was entitled to the possession of it by virtue of his purchase of it from the defendant pursuant to the terms of the sale agreement.

[2] Since plaintiff's right of possession depended upon his purchase of it, and his right to the possession was a necessary part of his right of action, it would seem to follow that the purchase of the automobile was a part of the transaction set forth in plaintiff's complaint as modified by the admissions in his reply, and that the defendant's counterclaim for the balance of the purchase price arose out of the same transaction, or, at least, was connected with the subject of the action. The question at issue was which party, plaintiff or defendant, was entitled to the possession of the automobile at the time defendant seized it. Under like circumstances, and construing a statute identical with section 6541, subdivision 1, above, the supreme court of New York held, in an action for damages for the conversion of a note and collateral security, that defendant might counterclaim for the balance due on the note. (*Empire Dairy Feed Co.* v. *Chatham Nat. Bank*, 30 App. Div. 476, 52 N. Y. Supp. 387.) Upon principle, the decision of this court in *Scott* v. *Waggoner*, 48 Mont. 536, 139 Pac. 454, is conclusive in favor of the validity of this counterclaim.

2. Plaintiff contended in the trial court, and contends here, that the subsequent agreement entered into on the same day the note and mortgage were executed and delivered worked a novation of the original obligation represented by the note and mortgage, and that such new agreement may be shown, even though it rests in parol and has not been fully executed. The question still [3, 4] remains: Was there a novation? "Novation is the sub-

stitution of a new obligation for an existing one." (Rev. Codes, sec. 4958.) "Novation is made: 1. By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation. * * * " (Sec. 4959.) It is to be observed that novation does not result from the substitution of one paper writing for another, or one evidence of debt for another, or one contract for another, but only by the substitution of a new obligation for another with intent to extinguish the old one. "An obligation is a legal duty, by which a person is bound to do or not to do a certain thing." (Sec. 4892.) The note and mortgage executed contemporaneously are to be treated as one agreement. Now, the legal duty (obligation) owed by plaintiff to defendant was to pay the debt represented by the note and to hold the machine as security until such payment should be made. There is not even a contention that by the new agreement this debt was extinguished, but, on the contrary, the existence of the same debt is alleged under the new agreement, the only effect of which was to change the time and manner of its payment. Novation, as defined by section 4959, subdivision 1, above, is of civil-law origin. (1 Parsons on Contracts, 217.) In his treatment of the subject from the standpoint of the civil law, Pothier says: "So if, subsequent to the contracting of a debt, some act passes between the debtor and creditor, allowing a further time, or appointing a different place for payment, or authorizing a payment to some other person than the creditor, or agreeing to take something else in lieu of the sum due, or by which the debtor engages to pay a larger sum, or the creditor to accept a smaller, in these and similar cases, according to the principle that a novation is not to be presumed, it should be decided that no novation had taken place, and that the parties intended only to modify, augment, or diminish, the obligation, and not to extinguish the old debt, and substitute a new one, unless the contrary is particularly expressed." (1 Pothier on Obligations, 439.)

In *McDonnell* v. *Alabama Gold Life Ins. Co.*, 85 Ala. 401, 5 South. 120, it is said: "A 'novation,' under the rules of the civil

law, whence the term has been introduced into the modern nomenclature of our common-law jurisprudence, was a mode of extinguishing one obligation for another—the substitution, not of a new paper or note, but of a new obligation, in lieu of an old one, the effect of which was to pay, dissolve, or otherwise discharge it.''

Our conclusion is that novation was not effected by the transaction pleaded, but that the new agreement merely tended to modify the prior written contract represented by the note and mortgage in respect to the time and manner of payment and the character of security; and since such subsequent agreement [5] rested in parol, and was not fully executed, it was impotent for the purpose intended; for section 5067, Revised Codes, provides: ''A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.''

3. There is some contention that a mortgagee cannot execute the power of sale conferred by a chattel mortgage, but must call [6] upon the sheriff to make the sale, or proceed by an action to foreclose, but there is not any merit in this. Section 5742, Revised Codes, which applies to chattel mortgages, provides: ''A power of sale may be conferred by a mortgage upon the mortgagee or any other person, to be exercised after a breach of the obligation for which the mortgage is a security.'' The provision for calling upon the sheriff to execute the power of sale does not confer exclusive power upon such officer. (*Kerr* v. *Blaine,* 49 Mont. 602, 144 Pac. 566.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.