SPAULDING, APPELLANT, *v.* MAILLET, RESPONDENT.

(No. 4,366.)

(Submitted February 13, 1920. Decided February 24, 1920.)

[188 Pac. 377.]

*Attorney and Client—Contracts—Procuring Pardon—Invalidity
—Public Policy—Costs—Witnesses—Mileage and Per Diem.*

Contracts—Public Policy—Definition.
    1. "Public policy" is that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or is against public good, and is declared by the Constitution and statutes and, in the absence of declarations by either, by the decisions of the courts.

Same—Attorney and Client—Procuring Pardon—Validity of Contract.

2. Whether a contract to pay for services to be rendered in procuring or attempting to procure a pardon is valid or void, upon the theory that such a contract contemplates interference with the pardoning power, depends upon the character of the services contemplated.

[As to the validity of contract to procure pardon or parole, see note in **Ann. Cas.** 1917D, 890.]

Same—Attorney and Client—Public Policy.

3. Contracts between attorney and client for the employment and compensation of the former for his services, form no exception to the rule that contracts which contravene public policy are invalid and cannot be enforced.

Same—Attorney and Client—Procuring Pardon—When Contract Valid, When not.

4. If a contract between an attorney and one convicted of crime, to procure the latter's pardon, provides for the rendition of purely professional services, such as the drafting and presentation of a petition, the collection of information regarding the convict, *etc.*, it should be upheld; if, however, it contemplates favorable action through personal influence and solicitation, it should be condemned as contrary to good morals and sound public policy.

Same—Attorney and Client—Procuring Pardon—Invalidity of Contract.

5. *Held,* that a contract between an attorney and one convicted of the crime of introducing intoxicating liquors on an Indian reservation, under which the former should use his personal influence and friendship with a United States district attorney to secure from the latter a recommendation for the convict's pardon, was void as against public policy, the facts that unlawful means in carrying out the contract were not resorted to nor contemplated and that no injustice resulted to anyone from the execution of the contract being immaterial.

Same—Public Policy—Construction.

6. Courts are reluctant to declare agreements void as against public policy if by any reasonable construction they can be upheld.

Same—Rules of Interpretation—When not to be Resorted to.

7. Resort to the rules of interpretation to uphold a contract is not admissible if its meaning is free from doubt.

Same—Ambiguity—Construction.

8. Consideration of the circumstances surrounding the making of a contract and the probable intent of the parties, may be had only when the agreement is ambiguous in some of its terms.

Costs—Witnesses—Mileage and *Per Diem*—Proper Allowance.

9. In the absence of a clear showing of bad faith on the part of the prevailing party in calling a witness, the trial court's action in allowing him mileage and *per diem* will not be interfered with on appeal, the fact that the testimony was immaterial to any issue made by the pleadings not changing the rule.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

ACTION by C. A. Spaulding against Albert Maillet. Judgment for defendant, and plaintiff appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. A. P. Heywood,* for Appellant.

The contract sued on is one contemplating the services of appellant as an attorney in and about an effort to procure a pardon for the respondent, who had theretofore pleaded guilty to a felony, to-wit, that of introducing liquor upon an Indian reservation, Under the evidence, and the implied finding of the trial court that the contract was entered into, appellant was clearly entitled to recover unless such contract can be said to be contrary to public policy. That it is not so contrary to public policy is clear upon an application to the evidence of proper legal principles sustained by ample authority. (13 Corpus Juris, pp. 433, 434; 6 R. C. L., p. 766; *Moyer* v. *Cantieny,* 41 Minn. 242, 42 N. W. 1060.)

One of the leading cases on the subject under consideration is that of *Gordon* v. *Gordon,* 168 Ky. 409, Ann. Cas. 1917D, 886, L. R. A. (n. s.) 1916D, 576, 182 S. W. 220. In that case the court of appeals of Kentucky had under consideration a contract practically identical with the one in the case at bar, save and except that it was a contract to secure a parole instead of a pardon. The contract was held not to contravene public policy notwithstanding a statute of that state denounced a penalty against any person aiding or assisting in procuring the granting or refusing of a pardon, where such services were to be rendered for a fee or reward. Additionally it should be borne in mind that by proper statutory enactment, and by the rules and regulations of the Department of Justice, it has been provided that a person convicted of a crime may apply for a pardon. The object of the contract in question, therefore, was wholly lawful, and the principle laid down by the case last cited becomes necessarily applicable. For if the object of the contract is lawful, and no unlawful means were contemplated or used in carrying it out, it assuredly cannot contravene public policy. (See, also, *Bergen* v. *Frisbie,* 125 Cal. 168, 57 Pac. 784; *Chadwick* v. *Knox,* 31 N. H. 226, 64 Am. Dec. 329; *McBratney* v. *Chandler,*

22 Kan. 692, 31 Am. Rep. 213.)   Nor is it important whether respondent believed at the time the contract was entered into that improper influence would be brought to bear in performing the same.   (*Mulligan* v. *Smith,* 32 Colo. 404, 76 Pac. 1063.)

*Messrs. Patterson, Heyfron & Simes,* for Respondent.

The question here presented is as follows: Is the contract of an attorney to use his personal influence with a public official to secure a pardon void as against public policy? Perhaps the clearest statement of the rule is found in the annotation to the case of *Gordon* v. *Gordon,* L. R. A. 1916D, 580, as follows: "Though there is some conflict of opinion, contracts entered into to obtain a pardon or commutation of sentence have generally been upheld where the services contemplated are not other than the proper presentation of the case before the pardoning power. Where, however, personal interest enters into the success of the contract, or the use of personal influence is contemplated, the general rule is that the contract is illegal as against public policy and so unenforceable." In fact, the rule that a contract for the use of personal influence to affect the action of a public official is always void, whether it pertain to legislative, executive or judicial action. (6 R. C. L. 741; *Deering & Co.* v. *Cunningham,* 63 Kan. 174, 54 L. R. A. 410, 65 Pac. 263.; *Moore* v. *Hyde,* 39 S. D. 196, 163 N. W. 707.)

In the case of *Bremsen* v. *Engler* (1883), 17 Jones & S. (N. Y.) 172, it was held that a contract to procure a pardon made by a person who was not an attorney would be objectionable because it would appear on its face that the means to be employed were influence or personal solicitation or some others equally objectionable.

The essence of the illegality in this case, lies in the fact that it was sought to influence official action, not by an appeal to reason or argument, but by an appeal to personal friendship; this is fundamentally illegal. Moreover, the illegality was increased by the fact that the personal friendship was said to be used for a pecuniary consideration. Either one of these

elements makes the contract illegal. (*Chippewa Valley etc. R. Co.* v. *St. Paul & O. R. Co.*, 75 Wis. 224, 6 L. R. A. 601, 44 N. W. 17.) The underlying principles of all cases like the above are clearly set forth in the case of *Buck* v. *First Nat. Bank*, 27 Mich. 293, 15 Am. Rep. 189.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In June, 1917, Albert Maillet entered a plea of guilty to the charge of introducing intoxicating liquors on an Indian reservation, and was sentenced to imprisonment in the county jail of Lewis and Clark county for sixty days and to pay a fine of $100. Immediately after judgment was pronounced, Maillet employed C. A. Spaulding, an attorney engaged in the practice of the law at Helena, to prepare a petition to the President for a pardon. The services were rendered and paid for, and the employment terminated. Several days passed, and Maillet, not having heard from his petition, called Mr. Spaulding to the jail to obtain his opinion as to the cause of the delay, and was informed that it was doubtless due to the failure to have the petition accompanied by a favorable recommendation of the United States district judge or district attorney. Maillet then inquired whether Mr. Spaulding would undertake to secure the necessary recommendation, and what followed is told by Mr. Spaulding in his testimony, given upon the trial of this case, as follows: "I said to him, 'If I am to represent you in this matter, using my personal friendship to go to the district attorney's office and secure that kind of a recommendation for you, I am going to make a substantial charge.' He said, 'What do you mean by a substantial charge?' I said, 'I will charge you $300.' He said that was satisfactory, and I needn't worry about the money; that it would be forthcoming as soon as we received the pardon, or commutation of his sentence; he didn't care particularly which it was; his idea was to get back to his wife, or get back to his farm. His wife, I think, was over here at the time, and I think I saw her on one or two occasions at the jail.

Acting under that arrangement, that I have mentioned, I went to Mr. Homer Murphy, whom I have known for a good many years, who is a very close personal friend of mine. He is assistant United States attorney for this district, and was at that time and I asked him if he would; as a personal favor to me, send off a telegram to the Department of Justice, recommending that favorable action be had in Maillet's case. I think the suggestion came from someone—I am not certain who it came from—at any rate Mr. Heyfron came over from Missoula about it, and had an examination of Maillet made as to his physical condition not being good, as an additional reason for asking leniency from the Department of Justice. Acting at my request, Mr. Murphy wrote out in my presence there in the federal building a lengthy telegram to the attorney general. I cannot recall the date of it; but I know the telegram in some respects was not quite satisfactory to me. At any rate, I thought it ought to be made a little stronger in some particulars, and my recollection is that it was strengthened, and some suggestions of my own incorporated in it. In addition to that I wrote to Congressman Evans on behalf of Maillet. He said that he knew that his people knew Evans; and we awaited returns.'' About August 15, the President commuted the sentence to expire at once, but did not remit the fine. Thereafter this action was brought to recover the agreed compensation. Issues were joined, and a trial had to the court without a jury, which resulted in a judgment dismissing the action and for defendant's costs. From that judgment this appeal is prosecuted.

The trial court held that the contract contravenes the public policy of the state and is void, and the correctness of that conclusion is drawn in question here.

Public policy is that principle of law which holds that no [1] citizen can lawfully do that which has a tendency to be injurious to the public or against public good. (*Lawson* v. *Cobban*, 38 Mont. 138, 99 Pac. 128.) The public policy of the state is declared by the Constitution and statutes, and, in the absence of declarations by either, then by the decisions of the

courts. (*Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, **[2]** 681, 142 Pac. 631, 146 Pac. 469.) In the early English and American cases it was held quite uniformly that any contract to pay for services rendered in procuring, or attempting to procure, a pardon was void upon the theory that such a contract contemplated interference with the pardoning power, which should be as free from improper bias or influence as the trial of the convict before the court. (*Norman* v. *Cole,* 3 Esp. 253; *McGill's Admr.* v. *Burnett,* 7 J. J. Marsh. (Ky.) 640; *Hatzfield* v. *Gulden,* 7 Watts (Pa.), 152, 31 Am. Dec. 750; *Kribben* v. *Haycraft,* 26 Mo. 396.) By the more recent decisions the rule has been modified to the extent that the contract will be declared to be valid or invalid, depending upon the character of the services contemplated. (*Bergen* v. *Frisbie,* 125 Cal. 168, 57 Pac. 784; 6 R. C. L. 766.)

The facts of this case distinguish it from any other to which **[3]** our attention has been directed, but the principles involved are neither novel nor difficult of application. Contracts between attorney and client for the employment and compensation of the former for his services form no exception to the rule that contracts which contravene public policy are invalid and cannot be enforced. (2 R. C. L. 1041.)

From the authorities are deducible the following principles **[4]** applicable to the facts of this case: (a) If the contract provides for the rendition of purely professional services, such as the drafting and presentation of a petition for pardon, the collection of information regarding the convict, his former course of conduct, his deportment since the commission of the offense, the probability of his reformation, and, generally, the preparation and submission of arguments addressed to the judgment of the proper officer, and services of like character, it should be upheld. (*Trist* v. *Child,* 21 Wall. 441, 22 L. Ed. 623; *Buck* v. *Bank,* 27 Mich. 293, 15 Am. Rep. 189; *McBratney* v. *Chandler,* 22 Kan. 692, 31 Am. Rep. 213; *Chadwick* v. *Knox,* 31 N. H. 226, 64 Am. Dec. 329; *Moyer* v. *Cantieny,* 41 Minn. 242, 42 N. W. 1060.) (b) If the contract contemplates the introduction of

personal influence and solicitation as elements in procuring favorable action from those in authority, then it should be condemned as contrary to good morals and sound public policy. (*Moore* v. *Hyde*, 39 S. D. 196, 163 N. W. 707; *Houlton* v. *Nichol*, 93 Wis. 393, 57 Am. St. Rep. 928, 33 L. R. A. 166, 67 N. W. 715; 2 R. C. L. 1041; 6 R. C. L. 741, 766; 13 C. J. 433; note to *Gordon* v. *Gordon*, L. R. A. 1916D, 580.)    Personal influence in such matters is not the subject of bargain and sale—is not a vendible article in our system of laws; and to anyone who assumes to sell his influence, the courts will not lend their aid to collect the price.    (*Oscanyan* v. *Arms Co.*, 103 U. S. 261, 26 L. Ed. 539 [see, also, Rose's U. S. Notes]; *Chippewa Valley & R. Co.* v. *Chicago etc. R. Co.*, 75 Wis. 224, 6 L. R. A. 601, 44 N. W. 17.) The reason for the rule is obvious.    Public office is a public trust to be exercised, not to reward friends or punish enemies, but solely from considerations of duty and for the public good; therefore there cannot be room for the introduction of the element of personal influence when official action is required.

With these general principles in view, what shall be said of [5] the contract in question?    Its terms are to be construed in the light of the surrounding circumstances.    Maillet had made application for pardon, but apparently no action had been taken upon it by the authorities at Washington.    It required the favorable recommendation of the district judge or district attorney. Mr. Murphy was assistant district attorney, and apparently had it within his power to grant or refuse the recommendation. From the opening sentence of plaintiff's testimony above, it would seem clear that he contracted to use his personal friendship with the assistant district attorney as the means for obtaining the desired recommendation, but if any doubt arises upon this subject, the construction of the contract by the plaintiff himself eliminates it beyond controversy.    He testified: "Acting under that employment, I went to Mr. Murphy, who is a very close personal friend of mine, and I asked him if he would, *as a personal favor to me,* send off a telegram to the Department of Justice, recommending that favorable action be

had in Maillet's case." The recommendation was requested, not because of the merits of Maillet's application, but as a personal favor to Mr. Spaulding. It is insisted, however, that this evidence demonstrates that unlawful means in carrying out the contract were neither resorted to nor contemplated. If this be conceded, it does not aid plaintiff, for that is not the test. The supreme court of the United States has said that contracts of this character "are void as against public policy without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country." (*Tool Co.* v. *Norris,* 2 Wall. 45, 17 L. Ed. 868 [see, also, Rose's U. S. Notes]; see, also, *Deering & Co.* v. *Cunningham,* 63 Kan. 174, 54 L. R. A. 410, 65 Pac. 263; *Kuhn* v. *Buhl,* 251 Pa. 348, Ann. Cas. 1917D, 415, 96 Atl. 977.)

The contract clearly contemplated the employment of personal influence and solicitation, and this is forbidden by public policy. Section 5051, Revised Codes, provides: "That is not lawful which is * * * (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals."

It is no argument to say that no injustice resulted to anyone from the execution of the contract. A reversal of this judgment would constitute a vindication—a judicial approval of an agreement which, to an unscrupulous attorney, would warrant employment for the most vicious lobbying purposes.

The statutes of this state recognize the right of parties to [6–8] enter into contracts, and the courts are ever reluctant to declare their agreements void as against public policy, and will refuse to do so if by any reasonable construction they may be upheld; but the right to contract has very substantial limitations imposed by section 5051 above, and other provisions of the law, and resort to the rules of interpretation to uphold a contract is never admissible if the meaning of the contract is free from doubt. (*Ming* v. *Pratt,* 22 Mont. 262, 56 Pac. 279.)

Consideration of the surrounding circumstances and the probable intent of the parties may be had only when the contract is ambiguous in some of its terms. (*Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761.) The terms of the contract in question, as they are laid bare by the testimony of the plaintiff, seem to us to admit of but one construction, and that the one given above.

Error is predicated upon the refusal of the trial court to strike [9] from defendant's cost bill the items for *per diem* and mileage of the witness Gutz. It is insisted that the evidence given by the witness was altogether immaterial to any issue made by the pleadings. The contention is determined adversely to the plaintiff by the former holding of this court. In *Isman* v. *Altenbrand,* 42 Mont. 188, 111 Pac. 849, this same question was presented and disposed of as follows: "It is true that the testimony of the witness Roberts was mostly hearsay; but it often happens that in the conduct of trials witnesses fail to give competent or material evidence and are excused without having been of any material assistance to the party calling them. In the absence of bad faith, however, it has never been the practice to refuse to tax the mileage and *per diem* of such witnesses against the defeated party. Bad faith in such a case must be clearly shown to the satisfaction of the court."

The trial court was apparently not satisfied from the showing made that the defendant acted in bad faith in calling the witness Gutz, and we are not warranted in interfering with its conclusion.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY and MATTHEWS concur.

MR. JUSTICE COOPER, being absent, takes no part in the foregoing decision.

Rehearing denied March 22, 1920.