DORRELL, APPELLANT, *v.* CLARK ET AL., RESPONDENTS.

(No. 6,823.)

(Submitted October 10, 1931. Decided November 7, 1931.)

[4 Pac. (2d) 712.]

*Mr. L. R. Daems,* for Appellant, submitted an original and a supplemental brief, and argued the cause orally.

*Mr. L. D. Glenn,* for Respondents, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. Mac-Donald,* Assistant Attorney General, for Respondents, submitted a supplementary brief; *Mr. MacDonald* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In October, 1929, L. W. Clark, sheriff of Wheatland county, seized two slot-machines which had been installed in Dorrell's "Billiard Parlor" under an agreement that he would "pay" to the owner twenty-five per cent. of the money they took in, and arrested Dorrell who pleaded guilty to the crime of operating them.

The court ordered the machines destroyed and any money found in them deposited with the clerk of the court; $88.85 was so deposited and, on refusal of the clerk to turn the money over to him, Dorrell commenced this action, alleging that he was entitled to the "immediate possession of it." Issue being joined, the cause was submitted to the court on an agreed statement of facts, which recites that the "point in dispute is as to whether or not * * * sections 11166 and 11167 of the Penal Codes are broad enough to permit" the confiscation and destruction of money, and "whether plaintiff * * * is entitled to have the money returned to him."

The cited sections provide for the seizure and destruction of "every machine, apparatus or instrument" used for the purpose of violating the Anti-gambling Law. Money used to gamble, either with or for, is not mentioned in the Act, except that it is provided that money lost in this manner may be recovered by the loser within sixty days, and if the loser fails to seek recovery within the time limited, anyone dependent upon him may recover it within one year. (Secs. 11173, 11174, Rev. Codes 1921.)

It is clear that the Act does not authorize the seizure of ▮ money, as such, and, certainly, it does not authorize its destruction in violation of the laws of the United States, but it does not follow that the seizure of the money in the manner indicated here was unlawful or that plaintiff is entitled to have it returned to him.

Counsel for plaintiff relies solely upon the pronouncements found in *Miller* v. *State*, 46 Okl. 674, 149 Pac. 364, 365, and

*Kearney* v. *Webb*, 278 Ill. 17, 3 A. L. R. 1631, 115 N. E. 844, each of which is clearly distinguishable from the case at bar.

The question determined in the *Miller Case* was as to the authority of a sheriff to seize a "roll" of money found on a poker table at the time of a raid. Writing in humorous vein Justice Brewer, of the supreme court of Oklahoma, declared that all devices legally seized must under the law be destroyed, and that we would be "hard to convince that even our most opulent legislators could have intended to so treat a commodity so widely and universally useful and so strangely hard to acquire," but decided against the authority of the sheriff on the mere showing that the money was found "on the table"—that it was not shown to have been in the "pot" and "certainly none of it had found its way into the 'kitty.'" The court declared that "it may have been that the sporty individual was merely making a vulgar display of his wealth" to impress his opponents, or "was merely extracting from his 'roll' a small bill, for purposes of refreshment" as "it is said that such environs are conducive of thirst."

In the *Illinois Case,* Kearney recovered money which he had placed with his employee for the purpose of gambling and which was seized on a raid, on the theory that Kearney had a right to withdraw from the illegal agreement and have his money returned to him, and made out a prima facie case without showing the illegal agreement, which was brought into the case by the defense. Neither holding is authority for a recovery by this plaintiff.

The recent case of *State* v. *Falgren,* 176 Minn. 346, 223 N. W. 455, 456, is more nearly in point. The question there was as to the authority of the court, in condemnation proceedings against slot-machines, to order the machines sold, after destruction, so that they could no longer be used for gambling, and the proceeds of the sale and such money as was found in the machines forfeited and turned into the county treasury. In this connection the court said: "The purpose of the statute is to destroy gambling devices * * * not to get for the county the proceeds of gambling nor the junk value of the gambling devices. It seeks to stop gambling, not to take

for the county money which has been lost at gambling or the value of the gambling devices." Another declaration of the court will be later considered. The court modified the order of condemnation by striking therefrom the provisions considered. The decision is undoubtedly correct, but the court did not hold that the money found in the slot-machines was the property of the operator of the machines, or order it turned over to anyone.

It will be noted that in the case at bar, the court did not order the money here involved "forfeited" or turned into the county treasury; the order was merely that it be deposited with the clerk of the court, and thus held *in custodia legis* for whomsoever was lawfully entitled to it.

In seeking to recover the money, plaintiff brought his action in conversion, alleging that the sheriff, without right or authority, seized and carried away and detains property to the "immediate possession" of which plaintiff was entitled. In such an action plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of that of his adversary (*Kinsman* v. *Stanhope,* 50 Mont. 41, L. R. A. 1916C, 443, 144 Pac. 1083; *Shipler* v. *Potomac Copper Co.,* 69 Mont. 86, 220 Pac. 1097), and, without regard to the nature of the action, plaintiff must establish his right to the money in order to secure its delivery to him.

It is first apparent that the sheriff did not wrongfully seize the money in question. The statute authorized him to seize the slot-machines in operation. It is clear from the record and from the nature of the devices seized that the money was within the mechanism of the slot-machines and was not disclosed until the order for their destruction was obeyed. Clearly, these were what is known as "money machines" and were operated by placing a coin in a slot and manipulating a lever, when the coin became a part of the device for operating the machine and if, perchance, the operator was lucky, it released other coins from the internal workings of the machine and expelled them therefrom. Under such circumstances the coins, and all of them, were as much a part of the gam-

bling device as was the lever, or dials, or slot; the machine could not be operated without their use, and the machines, as they were when seized by the sheriff, could not "pay" except for the coins therein. When, therefore, the sheriff carried away the machines as he found them, he committed no trespass—he but performed a duty imposed upon him by law. This theory is said to have been "adroitly" advanced by the state in *State* v. *Falgren,* above, with the addition that the money was "subject to disposition as a part of the gambling devices." It was not discussed by the court, but merely passed with the remark: "We do not take this view." Whether or not the money here considered was "subject to disposition as a part of the gambling devices" we need not here determine; the trial court did not dispose of it as such, but, in so far as the taking is concerned, the money was clearly such an integral part of the machines as that the machines could not be carried away without taking the money.

We concede that, had plaintiff unlocked the machines and taken the money therefrom before they were seized by the sheriff, the latter would not have been authorized to seize the money, but here the plaintiff had but permitted another to place in his "Billiard Parlor" a trap for the gullible under agreement to divide the spoils, and had not yet reduced these to possession. The money had been placed in the machine by parties unknown on the chance that the mechanism might discharge a greater amount from the stored-up capital of those who had taken a like chance of getting much for little. All of this money belonged to those who had put it into the machines, and, had plaintiff reduced it to possession, it could have been recovered from him on demand. Consequently, at the time the order was made, which was within thirty days after seizure of the machines, the owners of the money might have demanded it from the court, and at the time the matter was submitted to the court in this action and the judgment herein was entered, those dependent upon the losers were entitled to recover the money under the statute above cited.

All of these facts were necessarily disclosed to the court by the plaintiff in attempting to make a prima facie case. Thus the plaintiff, admitting the violation of the law, asked the aid of the very court charged with the duty of punishing that violation, and which had performed that duty, in securing the fruits of his outlawry, which he admitted he would not be entitled to retain under the law, had he reduced the same to possession. ''No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim.'' (13 C. J. 492; *Morrison* v. *Bennett*, 20 Mont. 560, 40 L. R. A. 158, 52 Pac. 553; *McManus* v. *Fulton*, 85 Mont. 170, 67 A. L. R. 690, 278 Pac. 126.)

Plaintiff asserts that the general rule is that illegality cannot be set up by a third person, but is only available to a party to a contract (13 C. J. 508); but he fails to note that the text reads: ''This rule is of course subject to an exception, where it is attempted to assert rights based on the contract.'' Strictly speaking, there is no contract here involved; plaintiff merely seeks the aid of the court to reduce to possession the spoils of the law's violation.

It is urged that ''inferentially Montana recognizes the winner of money in a gambling game reduces same to ownership and possession'' by reason of the provisions of sections 11166 and 11167, above. In the ordinary gambling game wherein money changes hands, the winner undoubtedly reduces it to possession, but where the money is but entrapped as in a slot-machine the ''possession'' is at least qualified; it has never come into the hands of the operator and, as shown above, remains a part of the machine until released. As to ''ownership'' the statute rather recognizes that in the loser and but prescribes a statute of limitation or condition precedent for its recovery; although, after the expiration of the time limit, an action will not lie, it does not follow that the law recognizes ownership in the winner.

We are not concerned with the ultimate disposition of the money; we agree that it was not deposited with the clerk of the court as a "fine or forfeiture" to go to the school fund; as it constitutes a retrieved portion of a destroyed machine, can it be considered "treasure-trove"? (*Ferguson* v. *Ray*, 44 Or. 557, 102 Am. St. Rep. 648, 1 Ann. Cas. 1, 1 L. R. A. (n. s.) 477, 77 Pac. 600; *Vickery* v. *Hardin*, 77 Ind. App. 558, ▮ 133 N. E. 922.) However, whatever may or may not be done with the money in the custody of the court, the power of our courts, either at law or in equity, cannot be invoked in aid of one showing a violation of the law, to complete the illegal transaction and secure to the violator the fruits of his outlawry.

The judgment is in conformity with the public policy of the state and of good morals. Affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD concur.

MR. JUSTICE ANGSTMAN: I dissent. I agree with all that is said in the opinion of my associates portraying the pernicious character of the slot-machine as a contrivance by means of which money is taken from the gullible, and that the judgment of the trial court is in conformity with good morals and what public policy ought to be. But the question of the public policy of the state is a legislative one where the legislature has legislated on the subject (*Spaulding* v. *Maillet*, 57 Mont. 318, 188 Pac. 377; *State ex rel. Rankin* v. *Harrington*, 68 Mont. 1, 217 Pac. 681), and not one for the courts, and whether the judgment conforms to the public policy of the state depends upon what the legislature has said on the subject.

The precise question before us is to determine what consequences the legislature has prescribed shall flow from the violation of the gambling law. Determination of this question depends entirely upon what the law is, as declared by the legislature, rather than what the court thinks it ought

to be. The legislature has prohibited the use or possession of slot-machines, *eo nomine*. (Secs. 11159, 11160, Rev. Codes 1921.) It must be assumed that the legislature, when enacting these sections of our statute, knew what a slot-machine was and that usually one in use contains money. A forfeiture of that money can be had only when expressly imposed by law. (Sec. 11605, Id.) If the legislature desired to confiscate or declare forfeited the money found in the machine, it could easily have done so. Instead of doing so, it prescribed a penalty of not less than $100 nor more than $1,000 and imprisonment not less than three months nor more than one year, or both fine and imprisonment. (Sec. 11159, Id.) It also provided for the destruction of the "machine, apparatus, or instrument." (Sec. 11167, Id.)

These penalties, I think, were intended to be exclusive, and that the legislature contemplated that money won by the use of such machines belongs to the operator, subject only to the right of the loser to recover it by action within sixty days (sec. 11173, Id.), or upon his failure to do so, then to the right of his dependents to do so within one year (sec. 11174, Id.). None of these parties asserted any right to the money prior to the entry of the judgment here appealed from, or since so far as we know, and the time for so doing has now expired. If such action is commenced in any case, it must be brought against "any person having any interest, direct or contingent, in the game, as owner, backer, or otherwise," and all of such persons may be joined in the one action. (Sec. 11173, Id.)

There is no provision whereby the losers of the money may bring an action against the clerk of the court or any other third person having possession of the money lost, who had no connection with the game. Of course, the court might have fixed the amount of the fine on plaintiff's plea of guilty, in such sum, not exceeding $1,000, as would have accomplished the forfeiture of the money in the machine as a part of the fine, but the record does not disclose that this was done. The statute contemplates that the order for the destruction of the

machine shall be made after disposition of the criminal prosecution (sec. 11167, Id.), and I assume this is what was done. The order directing the deposit of the money with the clerk of the court is a part of the order for the public destruction of the machines, and hence must have been made after disposition of the criminal prosecution and not as a part of it.

It is worthy of note that if any action be brought by the loser or his dependents to recover the money lost, exemplary damages are allowed in case of recovery, which shall not be less than $50 nor more than $500. (Secs. 11173 and 11174, Id.) The exemplary damages are not the same as the fine that may be imposed, but both the minimum and maximum which may be awarded as exemplary damages are but one-half of the fine prescribed.

Section 11176 then provides that if the money lost is repaid and the exemplary damages are paid, the one guilty of violating the law "shall be acquitted and discharged from any further or other forfeiture, punishment, penalty, or prosecution he or they may have incurred for so winning such money or thing, discovered and repaid." This language seems to me clear. It proclaims a legislative policy in unmistakable terms that the operator of the machine shall not be subjected to the penalty prescribed as for a misdemeanor and at the same time be compelled to surrender the money in the machine. The fact that the exemplary damages, both minimum and maximum, are fixed at one-half the minimum and maximum fine that may be imposed is persuasive, at least, that the legislature took into consideration that in the one case the guilty party would be required to repay the money won by him, in addition to exemplary damages, while in the other he would not.

The conclusion in the majority opinion that the money in the machines belongs to those who put it in, is, I think, unwarranted. If that is the case, why did the legislature speak of the one party as losing money and the other as winning, as it did in sections 11173, 11174, 11175, 11176? If the money in the machines belongs to those who put it there, then they have

in fact lost nothing. And if the guilty operator does not own it, then why is he characterized as one winning money?

Neither am I able to follow the specious reasoning in the majority opinion, implying that a different result might follow if the operator had reduced the money to possession prior to the time the machines were seized by the sheriff. I think the money was in the possession of the operator of the machines under the circumstances here. He admittedly was in control of the machines in his place of business. He pleaded guilty of that charge. Had he concealed intoxicating liquor or opium in the machines instead of money, he could have been prosecuted for having unlawful possession thereof. (*State* v. *Jacobson*, 77 Mont. 57, 249 Pac. 571.)

Of course, I concede that the sheriff had the right to seize the machines, and the fact that they contained money did not prevent him from so doing. But when the money was found, I think since the legislature has not otherwise provided, it should be returned to the party whom the legislature recognizes had won it. Upon refusal to do so, I think he has the right to maintain an action for its recovery. He is not seeking recovery on an illegal contract. The gambling transaction was a closed incident when the money was placed in the machines and the lever operated. Let us suppose that the operator of a machine lent money to A, which he took from a slot machine in A's presence, as the winnings of its unlawful operation. A, like the defendants here, came rightfully into the possession of the money. Is it possible that A can defend the action to recover on the loan on the ground that the money originally came from an unlawful enterprise? The cases are legion that he cannot. This court has so held in *Owens* v. *Davenport*, 39 Mont. 555, 28 L. R. A. (n. s.) 996, 104 Pac. 682. Many others to the same effect are collected in the dissenting opinion in the case of *McManus* v. *Fulton*, 85 Mont. 170, 67 A. L. R. 690, 278 Pac. 126, commencing on page 207 of 85 Mont. (278 Pac. 134). I was of the opinion that those cases had no application to the facts of that case, but I think they have application here and that this case

presents a striking illustration of the exception alluded to in the case of *Morrison* v. *Bennett*, 20 Mont. 560, 40 L. R. A. 158, 52 Pac. 553. I concede that defendant may, in a proper case, plead the illegal contract to defeat recovery (*McManus* v. *Fulton, supra*), yet, I think, after the illegal contract has been fully executed and the money gained by an illegal manner comes into possession of a third person, though rightfully, the latter will not be permitted to retain it, when otherwise not entitled to it, on the sole ground that the person seeking possession originally obtained it from an illegal source. That is precisely the position of the defendants here. They are the ones who have pleaded the illegal source of the money.

I agree with the majority opinion wherein it states that the Minnesota case of *State* v. *Falgren*, 176 Minn. 346, 223 N. W. 455, 456, is "undoubtedly correct," but in so far as the majority opinion then proceeds to arrive at an opposite conclusion than did the Minnesota supreme court, I disagree with it. The supreme court of Minnesota in that case said: "2. The court directed that the slot-machines, after their destruction as gambling devices, be sold as upon execution and the proceeds turned into the county treasury. There was in the four slot-machines the sum of $106.90, the proceeds of gambling. The court directed this sum to be turned into the county treasury. The purpose of the statute is to destroy gambling devices so that they cannot be used. It is not its purpose to get for the county the proceeds of gambling nor the junk value of the gambling devices. It seeks to stop gambling, not to take for the county money which has been lost at gambling or the value of the gambling devices after they are rendered useless for gambling. The state adroitly suggests that the money was a part of the gambling devices since the slot-machines could be used only with money; and, that the money found in them was money used in the slot-machines, substantially a part of them, and subject to disposition as a part of the gambling devices. We do not take this view. We have examined *State* v. *Powell*, 170 Minn. 239, 212 N. W. 169, cited by both parties, and see no necessity

of commenting upon it. So far as is apparent the court on motion can correct the error by striking out a portion of the conclusions of law and directing judgment in accordance with the view we have expressed. Reversed.''

Now, just what did the court mean in the concluding paragraph of that opinion? Did the court not in effect order the lower court to return the money to the guilty operator? It was the guilty operator who complained of the lower court's action. It was on his appeal that the judgment was ordered modified. Is it to be supposed that the lower court, on modification of the judgment, ordered the money to be deposited with the clerk of the court or to be held by the county, not in its treasury, but as ''treasure trove''? I think the only reasonable conclusion to be drawn from the opinion, read in its entirety, is that the person complaining, the guilty operator, obtained the relief demanded by him to the extent indicated by the court.

I think the Minnesota supreme court reached the correct conclusion and that the judgment here should be reversed.

Rehearing denied November 17, 1931.