No. 87-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

DEBRA LANE,

       Plaintiff and Respondent,

   -vs-

LARRY DUNKLE,

       Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lloyd E. Hartford, Billings, Montana

    For Respondent:

        Jerrold L. Nye, Nye and Meyer, P.C., Billings, Montana

Submitted on Briefs:  March 3, 1988

Decided:  April 14, 1988

Filed: APR 1 4 1988

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendant/appellant Larry Dunkle (Dunkle) appeals from an order of the Thirteenth Judicial District Court awarding plaintiff/respondent Debra Lane (Lane) $2,857.42 for conversion of her commission and expense checks and $25,000 in punitive damages. We affirm.

We are presented with the following issues:

1. Was there sufficient evidence to submit plaintiff's conversion theory to the jury?

2. Whether the District Court erred in entering judgment awarding punitive damages?

Debra Lane intially associated with Globe Life and Accident Insurance Company (Globe) on April 16, 1984 under the terms and conditions of an Independent Agent's Contract. Dunkle, who was manager of the Billings' Globe office from March, 1984, through June, 1985, was Lane's supervisor. Lane worked as an insurance salesperson for Globe and was paid according to initial sales and "commissions on renewals" meaning she was paid after premiums of previous policies were paid by policy holders.

Globe issued three commission checks payable to Lane on April 16, May 13, and June 4, of 1985. Globe also previously issued a fourth check in Lane's name for $100 to offset her expenses while she was training in Livingston, Montana. She endorsed this check over to Dunkle upon assurances by Dunkle that her expenses would be paid on the trip and any excess would be reimbursed at the following Monday morning meeting. Lane never received any money at this juncture and in fact paid Dunkle an additional $86. At trial, Dunkle testified that he forged Debra Lane's signature

2

on the three commission checks, cashed them, and never informed Lane that he had the money.

Dunkle argues Lane's employment at Globe terminated prior to April of 1985 and therefore she was not entitled to the commissions. The record shows Lane received formal written termination from Globe on June 28, 1985. Dunkle was informed by superiors to formally terminate Lane and he drafted this letter on June 27, 1985.

Lane originally filed a complaint on July 8, 1985. The complaint was amended March 31, 1987. In addition to the claim of conversion, Lane alleged the following: sexual harassment; threats of physical harm and injury causing emotional distress; that Dunkle forced her to use illegal and unethical methods in the sale of insurance; constructive discharge and intentional and negligent infliction of emotional distress. A three-day jury trial commenced on June 29, 1987 and the jury returned a verdict in favor of Lane on the grounds of conversion only on July 1, 1987. The jury granted damages in the amount of $617.42 plus interest for an award totalling $2,857 plus $25,000 punitive damages. Dunkle motioned for a directed verdict at the close of Lane's case and motioned for judgment notwithstanding the verdict at the end of trial. The District Court denied the motion for directed verdict at trial and the motion for judgment not withstanding verdict in an order dated August 19, 1987 and it is from this order that Dunkle appeals.

Dunkle initially argues Lane failed to prove conversion because she did not prove she was legally entitled to the proceeds of the commission checks after April 1, 1985. Lane testified that she was employed full time as a bookkeeper at a different business after April 1, 1985 and that she did not sell a policy after this date. Dunkle claims the terms of

3

the Independent Agent contract Lane signed control.  This contract, in paragraph 5, specifically provides:

> The deferred and renewal commissions set forth in the Commission Schedule shall be payable on the 20th of the month succeeding the month in which the premium is received by the Company provided that the Agent is representing the Company on that date, and it is expressly agreed by the Agent and the Company that such deferred and renewal commissions are non-vested and entitlement thereto by the Agent automatically terminates with the termination of this Contract . . .

Because Lane admitted she was not an active agent as of April 20, 1985, and because this clause specifically requires the agent represent the company, Dunkle argues she had no "ownership" interest in the commission checks and could not establish conversion.

Conversion requires ownership of property, a right of possession, and unauthorized dominion over the property by another resulting in damages.  Farmers State Bank v. Imperial Cattle Co. (Mont. 1985), 708 P.2d 223, 227, 42 St.Rep. 1419, 1424; Gebhardt v. D.A. Davidson & Co. (1983), 203 Mont. 384, 389, 661 P.2d 855, 858.  See also, 18 Am.Jur.2d Conversion, § 2, pp. 146-147 (1985).

The evidence presented in this case shows the jury was presented with sufficient evidence to determine Dunkle committed conversion.  The three commission checks were issued by Globe and made payable to Debra Lane.  These checks were regular renewal commission checks that the agent, Lane, was entitled to upon renewal of policies earlier sold by her. The jury could therefore find Lane had a property ownership interest in the checks.

4

In addition to paragraph 5 set forth above, Globe Independent Agent contracts included, in paragraph 11, the following statement in regard to termination:

> This contract may be cancelled by either party upon the written notice to the last known address of the other party . . . (Emphasis added.)

Lane received Dunkle's written notice on June 28, 1985. Dunkle also informed the State Insurance Commissioner that Lane was terminated June 28, 1985. This further supports a jury finding that Lane had an ownership interest in the checks if issued prior to the termination letter. Additionally, Helen Clark, who was the secretary in charge of disbursing the checks to all the agents testified that "[f]rom when they went to work until I issued the termination sheet, I always considered that the agent was still with Globe."

Dunkle testified to and admitted in the Agreed Statement of Facts that he forged Lane's endorsement on the checks and that he cashed these checks without Lane's knowledge. Dunkle did not inform Lane that he had the money. The jury could find by these facts that Dunkle exercised unauthorized dominion over the money resulting in damages to Lane.

The standard we use in reviewing denials of motions for directed verdicts only requires substantial evidence in the record supporting the finding of the jury. Gunnels v. Hoyt (Mont. 1981), 633 P.2d 1187, 38 St.Rep. 1492. This is the same standard used to determine sufficient evidence to support the jury's verdict on a motion notwithstanding the verdict. "We review the evidence in a light most favorable to the prevailing party. We will reverse only where there is a lack of substantial evidence to support the judgment

5

. . . ." Funk v. Robbin (Mont. 1984), 689 P.2d 1215, 1218, 41 St.Rep. 1848, 1850; see also, Kleinsasser v. Superior Derrick Service, Inc. (Mont. 1985), 708 P.2d 568, 569, 42 St.Rep. 1662, 1664. In Kleinsasser, supra, 708 P.2d at 570, we stated:

> The "substantial evidence" test variously expressed allows reversal only if there is a complete absence of probative facts to support the verdict (Griffel v. Faust (Mont. 1983), 668 P.2d 247, 249, 40 St.Rep. 1370, 1372), . . . or if there is a complete absence of any credible evidence in support of the verdict (Barmeyer v. Montana Power Company (Mont. 1983), 657 P.2d 594, 597, 40 St.Rep. 23, 25).

Reversal on the grounds expressed by Dunkle cannot be granted due to the substantial, credible evidence presented upon which the jury could base its verdict in regard to conversion. The District Court did not err in denying Dunkle's motion for a directed verdict or motion for judgment notwithstanding the verdict.

Dunkle next contends the District Court erred in accepting the jury's award of punitive damages because the claim should be considered one for breach of contract. Dunkle contends since Lane "elected to affirm the express contract by suing for all commissions, monies and earnings stolen and/or wrongfully withheld and any penalty that may be allowed by law for breach of contract" that she should not be entitled to punitive damages. Section 27-1-220, MCA (1987).

The trial court appropriately instructed the jury on punitive damages and Dunkle failed to object. It is uncontroverted that a party cannot raise an issue on appeal that was not objected to at the trial level as Lane appropriately points out. Clark v. Norris (Mont. 1987), 734 P.2d 182, 188, 44 St.Rep. 444, 450. The jury was instructed

on conversion. The instruction allowed the jury to grant actual damages.

An additional instruction stated the jury could grant punitive damages if it found actual damage was suffered and oppression or malice was present. The jury received definitions of malice and oppression in the instructions. Section 27-1-221, MCA (1985), provides for punitive damages when malice or oppression are found by the jury just as instructed in this case. Bollinger v. Hollingsworth (Mont. 1987), 739 P.2d 962, 964, 45 St.Rep. 1228, 1231. The submitted instructions were based on § 27-1-221, MCA, that allowed presumed malice. In 1987, the Legislature amended this statute to allow punitives upon proof, by clear and convincing evidence, of actual malice or oppression. Section 27-1-221, MCA (1987). However, this change is immaterial in this case.

The jury was properly instructed as to the awarding of punitive damages and could infer either malice or oppression by Dunkle. Dunkle's breach of contract argument on this appeal is not supported by the evidence nor the jury verdict. Dunkle was found liable for commission of conversion. It is hornbook law that conversion is a tort. Prosser and Keeton on Torts, § 15, pp. 89-107, (1984).

We have held that punitive damages may be awarded where the nature of the wrong complained of and injury inflicted goes beyond merely violating the rights of another and is found to be willful and malicious. Safeco Ins. Co. v. Ellinghouse (Mont. 1986), 725 P.2d 217, 227, 43 St.Rep. 1689, 1701. The evidence shows Dunkle exercised a habit of depriving agents of checks specifically drafted in the agent's name. The jury could find this was an abuse of authority. In Dunfee v. Baskins-Robbins, Inc. (Mont. 1986), 720 P.2d 1148, 1155, 43 St.Rep. 964, 972, this Court looked

7

with favor upon an instruction that stated oppression was defined as "an act of . . . excessive use of authority" stating "an act is oppressively done if done in a way or manner which violates the right of another person with unnecessary harshness or severity as by misuse or abuse of authority or power." The award of punitive damages, $25,000, does not appear to be "grossly disproportionate" to his acts and therefore the result of passion or prejudice. Safeco, supra, 725 P.2d at 227.

For the foregoing reasons, the District Court did not err in denying Dunkle's motion for a directed verdict and judgment notwithstanding the verdict.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices