No. 87-546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

TIM ZIMMERMAN, individually and as
Personal Representative of the Estate
of DAN ZIMMERMAN,

        Plaintiff and Appellant,

  -vs-

BOZEMAN PRODUCTION CREDIT ASSOCIATION,

       Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Leonard J. Haxby, Butte, Montana

    For Respondent:

        Michael J. Lilly; Lilly, Andriolo & Schraudner,
        Bozeman, Montana

_____

Submitted on Briefs:  June 19, 1988

Decided:  August 8, 1988

Filed:    AUG 8 1988

_____
                     Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Tim Zimmerman, individually and as Personal Representative of the estate of Dan Zimmerman, appeals from the judgment of the District Court of the Eighteenth Judicial District, Gallatin County, entered upon a jury verdict. The jury found on a special verdict form that defendant Bozeman Production Credit Association (hereafter referred to as PCA) did not wrongfully convert certain farm equipment. We affirm.

Appellant frames three issues for review by this Court:

1. "Is the Jury's verdict in error in that it was not in conformance with the preponderance of the evidence?"

2. "Were the improper comments during closing argument of the Respondent's counsel of sufficient magnitude as to be error, which would mandate a reversal of the verdict?"

3. "Was the court's giving of Respondent's instructions 11 and 18, over the objection of the Plaintiff, error, and if so, was it error of sufficient magnitude that would warrant a reversal of the decision herein?"

Certain facts of this case are disputed, but a summary of those facts important to the above issues are as follows:

In 1981, Dan Zimmerman entered into a lease for farm land near Dillon, Montana, with the intention of moving to that area to go into the farming business. In order to pursue farming operations on the leased land, Dan Zimmerman purchased an Allis-Chalmers 7060 tractor, an Allis-Chalmers 26-foot disc and a Rollflex 26-foot tool bar for a total price of $44,000. He made a down payment of $15,000, and financed the remainder through PCA's Dillon office.

In January of 1982, Dan Zimmerman was killed in an airplane crash. His brother, Tim Zimmerman, was appointed

2

personal representative of his estate. Dan Zimmerman had credit life insurance through PCA that paid the balance owing on the farm equipment in question. However, the farm lease remained an obligation of the estate. The Zimmerman family contacted Jerry Ryan, a friend of the deceased who lived in the Dillon area, about taking over the farm lease. He agreed, but informed the Zimmermans that in order to farm the additional land, he would need more equipment. The Zimmermans agreed to allow Ryan to use the equipment purchased by Dan Zimmerman to farm the leased land, which he did for the 1982 season.

During January of 1983, Ryan contacted PCA's Dillon office about renewing his operating loan for the 1983 farming season. On his application forms for the loan, and later on the loan financing statement, Ryan listed the Allis-Chalmers tractor and 26-foot disc as collateral. The purpose of placing this equipment on the forms was disputed at trial.

PCA asserts Ryan represented to their employee that he had arranged to purchase the equipment from the Zimmermans, giving an $8,000 down payment with the balance to be paid in November of 1983. Tim Zimmerman (hereafter referred to a Zimmerman), on the other hand, argues that the equipment was listed in the application documents at the behest of the PCA employee, even though Ryan told him that he was only using the equipment and would not purchase it until November.

In the fall of 1983, Ryan defaulted on his loan from PCA. PCA took possession of all the items listed as collateral in the financing statement, including the tractor and disc at issue here. Zimmerman sought the return of the equipment, which PCA refused. On July 18, 1985, Zimmerman filed a complaint seeking possession of the equipment, as well as actual and punitive damages. The verdict was

returned in favor of PCA and judgment entered, and this appeal ensued.

## I.

Zimmerman first asserts that the jury's verdict was in error in that it did not conform with the preponderance of the evidence. The rule in this Court is that a jury's verdict will not be overturned if there is substantial evidence in the record to support the jury's finding. Lane v. Dunkle (Mont. 1988), 753 P.2d 321, 45 St.Rep. 686, and cases cited therein.

The record in this case supports the jury's verdict. PCA's Exhibit C introduced a trial is a security agreement dated February 11, 1983, between Jerry and Colleen Ryan and PCA. The agreement lists collateral pledged by the Ryans to secure an $87,609.00 loan. Included in that list is an Allis-Chalmers 7060 tractor and 26-foot disc, subject to a lien held by "B. Zimmerman." PCA's Exhibit H is a financial statement signed by the Ryans, which lists $23,500 as being owed to "Zimmerman" for the tractor and disc.

Peter Moe, the PCA employee who negotiated the Ryans' loan, testified at trial regarding PCA's Exhibit H. He stated the information was entered on the financial statement as the result of Ryan telling Moe that he had arranged the purchase of the equipment at issue from Zimmerman on the terms stated above. Moe testified that the money owed on the equipment was entered on the form as a liability for use in calculating Ryan's ability to repay the PCA loan.

PCA also offered testimony by its employees Bruce Parker and Boyd Hanson concerning telephone conversations they had with Bob Zimmerman, another brother of the deceased, after PCA took possession of the equipment at issue. In those conversations, Bob Zimmerman confirmed that a sale of the equipment to Ryan had taken place. The testimony of these

4

employees was buttressed by PCA's Exhibit G, a letter from Hanson to Bob Zimmerman confirming the contents of their telephone conversation. The letter asked for a written response if any of the information was incorrect, but no response was received.

While Zimmerman presented evidence supporting his version of the facts at issue, our function is not to agree or disagree with the verdict rendered by the jury. We simply review the record to search for sufficient evidence upon which the verdict could be based. Kleinsasser v. Superior Derrick Service, Inc. (Mont. 1985), 708 P.2d 568, 42 St.Rep. 1662. The record contains probative facts sufficient to support the jury's verdict that PCA did not wrongfully convert the equipment.

## II.

Zimmerman next asserts that PCA's attorney made improper comments to the jury during closing argument that were sufficiently prejudicial to require reversal of the jury's verdict. The record shows, however, that Zimmerman's counsel did not object to the allegedly prejudicial comments at trial, and in fact responded to them in his own closing argument.

Generally, under Rule 103, M.R.Evid., failure to object waives a claim of error unless a substantial right of the party is affected. Clark v. Norris (Mont. 1987), 734 P.2d 182, 44 St.Rep. 444. However, Zimmerman draws our attention to subsection "d" of Rule 103, which states that a trial or appellate court is not precluded from "taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Rule 103(d), M.R.Evid.

The "plain error doctrine" is used only in exceptional cases. Reno v. Erickstein (1984), 209 Mont. 36, 679 P.2d

1204. The comment complained of by Zimmerman was an instance of "wondering aloud" by PCA's counsel as to why Ryan's wife was not called as a witness, because she was present when Ryan allegedly told Moe he had purchased the equipment at issue. While Zimmerman does not set forth the particular right this comment is to have affected, it appears from his brief that he is asserting his right to a fair trial. However, we do not see evidence in the record of this case to indicate that Zimmerman's right to a fair trial was affected. We decline to apply the plain error doctrine, and instead rest on the general rule stated above that Zimmerman's failure to interpose timely objection to the comment precludes him from raising this alleged error on appeal.

## III.

Zimmerman's final assertion is that the District Court committed reversible error in giving PCA's jury instructions 11 and 18. Zimmerman's brief on this point concludes, "The contentions of the Appellant in this case are that the instructions given were so erroneous and conflicting that the jury could not, without broad legal experience and expertise, separate one from the other to come up with what is a correct statement of the law as a whole ... "

At trial, Zimmerman's counsel objected to the instructions on grounds other than those argued to this Court. The objection to instruction 11 was that it did not fit the facts as presented at trial and might therefore mislead the jury. The objection to instruction 18 was that it referred to a creditor's right to possession of collateral without specifying that such collateral had to be "lawfully obtained." At no point did counsel state that the two instructions conflicted.

In Reno, 679 P.2d at 1209, we stated, "Plaintiffs will not be heard to challenge on appeal an instruction for

6

reasons not raised before the trial court. Rule 51, M.R.Civ.P. requires that the grounds for objection to jury instructions must be stated with particularity." The ruling in Reno is dispositive of this issue. Zimmerman will not be allowed to raise an objection to the instructions in this Court that was not presented to the District Court.

We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices