JUSTICE WEBER
delivered the Opinion of the Court.
This is an action for wrongful discharge. Plaintiff Gary W. Mannix appeals an order of the Second Judicial District, Silver Bow County, granting summary judgment for defendant Dennis Washington on all claims except a “corporate veil” claim. We affirm.
The issue is whether a genuine issue of material fact has been *374 demonstrated as to whether Washington acted in retaliation in removing Mannix from office, so that Washington can be held personally liable for Mannix’s discharge as president of the Butte Water Company.
Plaintiff Gary W. Mannix (Mannix) was an employee of the Butte Water Company (Water Company) from 1973 until December 1985. From 1983 until the end of his tenure, he was president of the Water Company.
From the 1960’s until December 1985, the Water Company was owned by the Atlantic Richfield Company (ARCO), and its various predecessors in title. In September of 1985, defendant Dennis Washington (Washington) and ARCO entered a letter agreement that Washington would purchase from ARCO a Butte mine, some 35,000 acres of property around Georgetown Lake, and the Water Company.
At the time of the September 1985 negotiations between ARCO and Washington, the Water Company carried, and had carried for some years, a note payable to ARCO for approximately $4.5 million. Part of the initial agreement between Washington and ARCO was that the $4.5 million debt would be erased and that Washington would receive the Water Company free and clear.
Dorn Parkinson was the president of Washington Corporations and also, an employee of Washington. On behalf of Washington, Parkinson met with Mannix several times in the fall of 1985 prior to the closing of the sale. Due at least in part to what he learned at those meetings, Parkinson determined that it would not be beneficial for the Water Company to be debt free. Washington arranged to use a personal line of credit at a Minnesota bank to get a $2 million loan for the Water Company and to personally guarantee the loan. ARCO and Washington agreed to modify the sale agreement to reflect a debt of $2 million on the Water Company. Washington and ARCO agreed that the $2 million obtained from the Minnesota bank would be paid to ARCO, and Washington’s purchase price for the package would be reduced by $2 million. The $4.5 million debt of the Water Company would be released as originally agreed, and Washington would own 100% of the stock in the Water Company.
On December 13,1985, the ARCO legal division asked Mannix, as the president of the Water Company, to call a meeting of the Board of Directors to authorize the execution of a $2 million six month promissory note. Mannix consulted several board members and a rate analyst at the Public Service Commission, but he did not call a board *375 meeting. He refused to execute the note on grounds that to do so was not in the interest of the Water Company. In his view, the note represented an increased debt for the Water Company, with no concomitant benefit, compared to the debt-free status the company would have enj oyed under the terms of the deal tentatively negotiated in September.
After Mannix refused to sign the promissory note, ARCO officials ordered him to do so or face personal liability if the deal fell through. Washington testified that, between December 13 and 18,1985, while he was in the offices of Gene Tidball, ARCO’s corporate legal counsel, he overheard a phone conversation between Tidball and Mannix from which he gathered that “[t]hey were having some problems with him ... he didn’t want to sign something.”
Mannix and another board member eventually signed a resolution authorizing Frank Gardner, another board member, to execute the note on behalf of the Water Company. Gardner executed the note and the closing of the deal between ARCO and Washington was held on December 18, 1985.
On December 18,1985, after the closing, Washington, through his corporate counsel John Thiebes, asked for the resignation of all members of the Board of Directors of the Water Company, effective immediately. The next day, Washington, as the sole shareholder in the Water Company, elected a new board of directors, consisting of himself, Parkinson, and Thiebes. At a directors’ meeting immediately thereafter, Parkinson was instructed to meet with Mannix to determine whether he should be retained as president of the Water Company.
Parkinson met with Mannix on December 20, 1985, in Butte, Montana. According to Parkinson’s deposition, he had been authorized by the new board of directors “to take whatever action I felt was necessary, including a termination.” Parkinson stated that, by the end of their conversation, Mannix agreed that he could no longer work for the company. In his deposition, Mannix stated that Parkinson told him that the new board of directors did not feel that they could work with him and that, therefore, he was terminated.
Mannix’s complaint for wrongful discharge and a violation of an implied covenant of good faith and fair dealing was originally filed against ARCO, Anaconda Minerals Company, the Water Company, Washington Corporations, and Washington. All claims have been dismissed against ARCO, Anaconda Minerals Company, and Washington Corporations. In the order from which appeal is taken, *376 all claims against Washington were dismissed except a claim based on a “piercing the corporate veil” theory.
Following the order granting summary judgment, a motion for substitution of judge was filed and the Honorable James E. Purcell assumed jurisdiction over the case. Two days later, the Honorable Leonard Langen, who had granted the summary judgment, filed a memorandum opinion in support of his ruling. Because Judge Purcell had already assumed jurisdiction when it was filed, we have not considered the memorandum opinion in reaching our decision.
Is there a genuine issue of material fact as to whether Washington acted in retaliation in removing Mannix from office?
Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. This Court’s standard ofreviewis the same as that employed by the district court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894.
Mannix argues that Washington can be held personally liable, as a member of the board of directors of the Water Company, in connection with Mannix’s discharge as president of the Water Company if Washington’s actions were against the best interests of the corporation, were for his own pecuniary benefit, or were undertaken with the intent to harm Mannix. Phillips v. Montana Ed. Ass’n (1980), 187 Mont. 419, 425, 610 P.2d 154, 158.
Mannix argues that it was against the best interests of the Water Company to discharge him because of his good work record with the company. He asserts that he was following his own corporate bylaws and honoring the wishes of his board of directors in refusing to sign the $2 million note.
It is clear that the disagreement about whether it was in the Water Company’s best interests to sign the $2 million note was actually between Mannix and ARCO, because the Water Company was controlled by ARCO at that time. Moreover, Mannix has failed to present any facts supporting the argument that signing the note was against the best interests of the Water Company. The record on summary judgment demonstrates that as a result of the purchase by Washington, the Water Company debt was reduced from approximately $4.5 million to $2 million. In addition, five months after *377 the purchase, Washington personally paid off the note, leaving the Water Company free of debt.
Mannix stated in his deposition that he did not know what he would do if faced with another situation in which he did not agree with the board of directors as to whether a particular action would be in the best interests of the Water Company. In contrast, Parkinson’s deposition established that the corporation needed “team players.”
We conclude that Mannix has failed to present facts which support the argument that his employment termination was against the best interests of the Water Company. Further, nothing in the summary judgment record supports an argument that Washington terminated the employment of Mannix for his own pecuniary benefit. The remaining question is whether Washington is personally liable for Mannix’s termination because it was his personal act of retaliation for Mannix’s refusal to sign the $2 million note on behalf of the Water Company.
In support of the argument that Washington is personally liable on these grounds, Mannix cites Washington’s apparent absolute control of the new board of directors. However, in the absence of a factual demonstration of retaliation, Mannix fails to demonstrate how that control is relevant.
According to the depositions, Washington and Mannix had met only once before Mannix was terminated. In his deposition, Washington stated that, when he overheard the argument between Tidball and Mannix, his reaction was “I thought he had a lot of balls.” Both Washington and Parkinson testified by deposition that the decision of whether Mannix should remain as president of the Water Company was left to Parkinson. Mannix points to a statement by Parkinson, in a deposition taken for another case but included in this record, that the Directors of the Water Company made the decision to terminate Mannix’s employ. However, that statement was explained in Parkinson’s deposition for this case, in which he stated that the termination of Mannix’s employ was empowered by and subsequently approved by the board of directors, but that the decision of whether to terminate Mannix was left to him. These facts do not demonstrate a retaliatory discharge on the part of Washington.
Mannix argues that the new board of directors was unlawful because it only had three members and because the secretary of the Water Company was not present at the board meeting. He relies upon Article VII, Section 2 of the By-Laws of the Water Company:
*378 “In case of a vacancy in the Board the remaining Directors shall continue to act; but if at any time their number be reduced to less than four, it shall be the duty of the remaining Directors to forthwith fill the vacancies.”
However, Article V, Section 4 of the same By-Laws provided that
“[t]hree Directors assembled together at any meeting shall constitute a quorum competent to transact business ...”
We conclude that a quorum of three directors was authorized to take action, under the By-Laws. As to the presence of the secretary of the Water Company, John Thiebes took notes as “acting secretary.” We conclude that was sufficient in a corporation newly acquired by one shareholder.
As the First Circuit Court of Appeals has noted
“State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind. ... But that does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.”
Hahn v. Sargent (1st Cir. 1975), 523 F.2d 461, 468, cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754. Although he has made an extensive argument, Mannix simply has not brought out any facts to support his position that Washington personally terminated Mannix’s employment with the Water Company in retaliation for his refusal to sign the $2 million note. We hold that the District Court did not err in granting summary judgment for Washington on all claims but the “corporate veil” claim.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON and GRAY concur.