No. 94-026

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ROBERT KING,

       Plaintiff and Respondent,

   v.

ROBERT ZIMMERMAN and CONNIE ZIMMERMAN
and BIG Z, INC., a Montana corporation,

       Defendants and Appellants.

APPEAL FROM:   District Court of the Thirteenth Judicial
District, In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr.,
Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              Michael G. Majerus, Attorney at Law,
Billings, Montana

       For Respondent:

              Brad L. Arndorfer, Attorney at Law,
Billings, Montana

**FILED**

Filed:     AUG 01 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  June 9, 1994

Decided:  August 1, 1994

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Robert King filed an action in the District Court for the Thirteenth Judicial District in Yellowstone County in which he alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion of property by defendants Robert and Connie Zimmerman and Big Z, Inc. Following a five-day jury trial, a verdict was returned for King and judgment was entered against Big Z and Connie Zimmerman. King was awarded compensatory damages for breach of contract and conversion in the amount of $9,654.24. He was awarded punitive damages in the amount of $1.00 against Big Z, and $35,000 against Connie Zimmerman, on the basis that they had acted with actual malice when they wrongfully converted King's property. Big Z and Connie Zimmerman appeal.

We affirm.

The following issues are raised on appeal:

1.   Did the District Court err when it refused to grant the defendants' motion for a directed verdict on the issue of conversion?

2.   Did the District Court err when it refused to grant the defendants' motion for a directed verdict on the issue of whether Connie Zimmerman was personally liable for conversion of property?

3.   Did the District Court err when it affirmed the jury's award and assessed punitive damages against Big Z and Connie Zimmerman?

2

4. Did the District Court abuse its discretion when it allowed into evidence an audio taped deposition of a witness for the plaintiff?

5. Did the District Court abuse its discretion when it allowed King to introduce evidence in support of claims which the defendants contend were not raised in the pretrial order?

This litigation involves a lease agreement between Robert King and a trucking firm known as Big Z, Inc., owned by Robert and Connie Zimmerman. Robert Zimmerman, as president of Big Z, owned 1899 of the 1900 shares of stock of the corporation. Connie Zimmerman, the corporation's secretary, owned the remaining one share of stock.

On May 10, 1991, King and Big Z entered into an agreement whereby King leased to Big Z a truck that he owned, and Big Z agreed to dispatch commercial loads to be hauled across the country by King or King's drivers. King was to receive 85 percent of the gross revenue from each haul, minus certain adjustments, and the remaining 15 percent of the gross revenue was to go to Big Z.

The agreement stated that King would provide the necessary permits, licenses, and insurance to haul commercial loads. King testified that Big Z initially purchased the required permits in the name of Big Z and King, and that he was reimbursing Big Z for these costs out of his monthly receipts. The agreement further provided that King, as lessor, could terminate the lease agreement 30 days after providing written notice, and that Big Z, as lessee,

could terminate the lease "in a 24 hour period with extreme cause, such as failure to perform."

The dispute leading to this lawsuit began with a load of cherries which were to be transported from the west coast to the east coast by Greg Ramey. The load was delivered late and resulted in substantial losses to Big Z. Ramey remained on the east coast with King's truck, and King eventually flew to the east coast in order to retrieve his truck. In connection with his return to Montana, King agreed to deliver a load of gambling "pull tabs" to the west coast. The specific events which occurred are in dispute, but King apparently returned to Montana with the load of pull tabs and then declined to deliver the load to Washington state.

In response, the Zimmermans terminated the lease agreement and immediately attempted to retrieve the license plates and other permits from King's truck which were in Big Z's name. Unable to do so, Connie Zimmerman contacted the Yellowstone County Sheriff's office on July 27, 1991, and reported that the semi-tractor had been stolen from their business. The sheriff's office refused to impound the truck, but did retrieve the license plates and permits, as requested by Connie Zimmerman.

On May 5, 1992, King filed a complaint against Big Z and Robert Zimmerman in which he alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion of property. King claimed that Robert Zimmerman and Big Z breached the lease by "willfully and intentionally refusing to dispatch plaintiff and making false reports of theft to the Yellowstone

4

County Sheriff's Department" and that they had converted King's property when they caused the sheriff's office to confiscate "tags, insurance and permits . . . in the name of Big Z for which the plaintiff had paid." Finally, the complaint alleged that "defendants are further liable for punitive damages for their intentional and malicious act of making false police reports in order to convert them [the property seized] from the plaintiff's use to their own." On June 15, 1993, the complaint was amended to include Connie Zimmerman as a defendant.

A jury trial was held on August 23-27, 1993. The jury found a breach of contract or the obligation of good faith and fair dealing, and assessed damages against Big Z in the amount of $8,288.33 as compensatory damages, plus interest and costs. The jury also found conversion by Big Z and Connie Zimmerman, and awarded compensatory damages of $1,117.23. Furthermore, the jury found that Big Z and Connie Zimmerman had acted maliciously with respect to the conversion, and returned exemplary damages against Big Z in the amount of $1.00 and against Connie Zimmerman in the amount of $35,000. No damages were assessed against Robert Zimmerman personally.

The court entered findings of fact and conclusions of law related to the amount of punitive damages on September 8, 1993, and awarded punitive damages to King in the amounts assessed by the jury. From the judgment entered on September 16, 1993, Big Z and Connie Zimmerman appeal.

5

ISSUE 1

Did the District Court err when it refused to grant the defendants' motion for a directed verdict on the issue of conversion?

Big Z and Connie Zimmerman contend that the court should have granted their motion for a directed verdict on the issue of conversion because the items that Connie Zimmerman requested the sheriff's department to return were license plates and permits which were owned by Big Z. They assert that King could not demonstrate that he owned the property or had a right of possession, and therefore, could not prove conversion or wrongful possession of this property by Big Z or Connie Zimmerman.

A court may grant a directed verdict only when it appears as a matter of law that the nonmoving party could not recover upon any view of the evidence, including the legitimate inferences to be drawn from the evidence. *Kearney v. KXLF* (Mont. 1994), 869 P.2d 772, 777, 51 St. Rep. 119, 123. A directed verdict for the defendant is not proper if reasonable persons could differ regarding the conclusions which could be drawn from the evidence, and a directed verdict is proper only in the complete absence of any evidence to warrant submission to the jury. *Dees v. American National Fire Insurance* (1993), 260 Mont. 431, 442, 861 P.2d 141, 148; *Moralli v. Lake County* (1992), 255 Mont. 23, 27, 839 P.2d 1287, 1289.

The standard we use in reviewing denials of motions for directed verdicts only requires substantial evidence in the record

6

to support the finding of the jury. *Lane v. Dunkle* (1988), 231 Mont. 365, 369, 753 P.2d 321, 323. We review the evidence in a light most favorable to the prevailing party, and will reverse only where there is a lack of substantial evidence to support the judgment. *Lane*, 753 P.2d at 323. Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion, even if it is weak or conflicting. *Arnold v. Boise Cascade* (1993), 259 Mont. 259, 265, 856 P.2d 217, 220.

Conversion requires property ownership, the owner's right of possession, and the unauthorized control over the property by another resulting in damages. *Lane*, 753 P.2d at 323. However, in an action for conversion, "property ownership" does not mean that the plaintiff must have absolute or unqualified title to the property in question, but rather that he or she must have an interest in the property and the right to possess the property at the time of the alleged conversion. *Kinsman v. Stanhope* (1914), 50 Mont. 41, 144 P. 1083; 18 Am. Jur. 2d *Conversion* § 75 (1985). Ordinarily, an immediate right to possession at the time of conversion is all that is required to enable a plaintiff to maintain an action. 18 Am. Jur. 2d *Conversion* § 76 (1985).

This statement of the law of conversion was properly reflected in the following instruction which was given to the jury:

> Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. To entitle the plaintiff to recover, the jury must believe,

7

from the evidence, that <u>the plaintiff was the owner of</u> <u>the property in question, or that he had some special</u> <u>interest therein, which entitled him to possession of the</u> <u>property at the time of the alleged conversion.</u> [Emphasis added].

Although the defendants consistently maintained that no conversion had occurred, the trial transcript reveals that the defendants specifically consented to this instruction regarding the law of conversion. However, on appeal, Zimmerman and Big Z contend that King cannot maintain a conversion action because he cannot prove that Big Z had actually transferred title or ownership of the items in question to King. The crux of their argument is that Big Z had title to the items seized, as was required by state and federal regulations pertaining to the trucking business, and King had no ownership interest in this property.

We disagree. Under the law of conversion, as properly stated in Jury Instruction No. 15, the jury did not have to find that King had absolute ownership of or title to the property in question, but rather that he had an interest in the property which entitled him to possession at the time Connie Zimmerman requested the sheriff to intervene. In this regard, the jury heard extensive testimony concerning the terms of the lease agreement which required King to provide the necessary permits, licenses, and insurance to haul commercial loads; the fact that federal and state regulations required these items to be obtained in Big Z's name, even though the lease required King to purchase them; King's right to possess these items until the lease was properly terminated, at which time the cost of these items would be prorated and he would be paid back

8

for the unexpired use of these items; the notice required prior to terminating the lease; and the fact that, in accordance with the terms of the lease agreement, King was reimbursing Big Z for these items out of his monthly receipts.

After considering this evidence in the light most favorable to King, including the legitimate inferences which could be drawn from this evidence, we conclude the jury could find that King had an ownership interest in the property in question. Although the evidence was conflicting, there was substantial evidence warranting submission of the issue of conversion to the jury and upon which a jury could base its verdict. Therefore, we conclude that Big Z and Connie Zimmerman were not entitled to a directed verdict on the issue of conversion.

## ISSUE 2

Did the District Court err when it refused to grant the defendants' motion for a directed verdict on the issue of whether Connie Zimmerman was personally liable for conversion of property?

The defendants contend that the court should have granted Connie Zimmerman's motion for a directed verdict on the issue of whether she can be held personally liable for conversion of King's property. Zimmerman and Big Z assert that under the corporate shield doctrine the shareholders of a corporation are immune from liability unless special circumstances exist which justify "piercing the corporate veil" in order to reach the shareholders individually. They maintain that Connie Zimmerman acted on behalf of the corporation, in furtherance of corporate goals, and that

9

there is no evidence to justify bringing Zimmerman within the exceptions to the corporate shield doctrine.

King counters by noting that this case did not involve an attempt to pierce the corporate veil in order to get at the assets of the shareholders for payment of a corporate debt. What was pled and tried in this case was whether Connie Zimmerman wrongfully converted King's property and whether there was a basis to hold her personally liable for her actions. In fact, the jury found that both Big Z and Connie Zimmerman were individually liable for conversion of King's property. King contends that at no time was the issue whether Connie Zimmerman should be held liable for the corporation's actions as one of its shareholders. We agree.

The jury was instructed as follows on the issue of personal liability on the part of Connie Zimmerman:

> Corporate officers or directors are privileged to interfere with or induce breach of the corporation's contracts or business relations with others as long as their actions are in good faith and for the best interests of the corporation. <u>Where an officer or director acts against the best interests of the corporation, acts for his own pecuniary benefit, or with intent to harm the plaintiff, he is personally liable.</u> [Emphasis added].

This jury instruction correctly states the law regarding personal liability of a corporate officer or director as set forth by this Court in *Phillips v. Montana Education Association* (1980), 187 Mont. 419, 610 P.2d 154. *See also, Mannix v. Butte Water Company* (1991), 249 Mont. 372, 816 P.2d 441; *Bottrell v. American Bank* (1989), 237 Mont. 1, 773 P.2d 694.

10

In this instance, the jury heard testimony that Connie Zimmerman, as secretary of Big Z, had intentionally made a false report to the sheriff's office when she reported that the semi-tractor had been stolen in order to "teach him [King] a lesson." Furthermore, the jury considered evidence regarding the termination of the lease without warning, and Connie Zimmerman's actions prior to calling the sheriff's office. Although this testimony was disputed, the jury resolved the conflicting evidence in favor of King. When such conflicting evidence exists, we do not retry a case because the jury chose to believe one party over another. *Simchuk v. Angel Island Community Association* (1992), 253 Mont. 221, 833 P.2d 158.

Using the same standard of review set forth in the previous section, we conclude that there was substantial evidence to warrant submitting the issue of personal liability to the jury. After drawing reasonable inferences in favor of King from the evidence presented, we conclude that a jury could logically infer that Connie Zimmerman's motives were not in the best interests of the corporation or that she had acted with the intent to harm King. We conclude the District Court did not err when it denied Connie Zimmerman's motion for a directed verdict on the issue of her personal liability.

### ISSUE 3

Did the District Court err when it affirmed the jury's award and assessed punitive damages against Big Z and Connie Zimmerman?

11

Connie Zimmerman and Big Z contend that punitive damages were improperly assessed against Zimmerman because there was no clear and convincing evidence of malice on her part. Furthermore, the defendants claim the District Court erred when it instructed the jury to consider the nine factors set forth in § 27-1-221(7)(b), MCA, with respect to this issue. They maintain that the court should have given the instruction they offered on punitive damages which was based on the Montana Pattern Jury Instructions, number 25.65.

The jury found that both Big Z and Connie Zimmerman converted King's property and had acted with actual malice. After the verdict, the court reviewed the award pursuant to § 27-1-221(7)(c), MCA. The court issued findings of fact and conclusions of law related to the amount of punitive damages, and adopted the amount of the jury's award.

Under § 27-1-221, MCA, reasonable punitive damages may be awarded when a defendant has been found guilty of actual malice. Section 27-1-221(2), MCA, provides:

> A defendant is guilty of actual malice if he has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>     (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
>     (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

"All elements of the claim for punitive damages must be proved by clear and convincing evidence . . . [which] is more than a

12

preponderance of evidence but less than beyond a reasonable doubt."
Section 27-1-221(5), MCA.

A jury award of punitive damages must be reviewed by the district court judge. Section 27-1-221(7)(c), MCA. A district court judge, having heard the evidence and observed the witnesses, is in the best position to determine whether the requirements of proof of punitive damages have been met. *Dees*, 861 P.2d at 150.

Here, Judge Colberg reviewed the award and concluded the jury correctly assessed punitive damages against Big Z and Connie Zimmerman, based on clear and convincing evidence that "Connie Zimmerman apparently intended to teach plaintiff [King] a lesson" and "[t]he behavior was intentional." Furthermore, after considering each of the relevant factors in § 27-1-221(7)(b), MCA, the court found that the jury had assessed an appropriate amount of damages against each defendant. In his findings, Judge Colberg carefully articulated how the evidence supported each of the statutorily required considerations for an award of punitive damages. Although the record is replete with conflicting testimony, there is substantial, credible evidence upon which a jury could base a determination that Connie Zimmerman and Big Z acted with malice toward King when a false report of a stolen truck was filed and King's property was converted.

In addition to rejecting the Zimmermans' contention that there was not clear and convincing evidence to support the jury's verdict, we find no merit in the argument that the judge improperly instructed the jury on the issue of punitive damages. For all

13

practical purposes, the differences between the proposed instruction and the given instruction, which was based on § 27-1-221, MCA, are negligible.

When we review a district court's refusal to give an offered jury instruction, the following rules apply:

> It is not reversible error for a trial court to refuse an offered instruction unless such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him.
>
> A party in not prejudiced by a refusal of his proposed instructions where the subject matter of the instruction is not applicable to the pleadings and facts, or not supported by the evidence introduced at trial, or the subject matter is adequately covered by other instructions submitted to the jury. [Citations omitted].

*Cottrell v. Burlington Northern* (1993), 261 Mont. 296, 306, 863 P.2d 381, 387.

In this case, the instruction given to the jury was substantially the same as that offered by the defendants. We cannot conclude that the defendants' rights were affected by the court's decision to instruct the jury as it did.

We conclude the court did not err when it adopted the jury's verdict and assessed punitive damages against Big Z and Connie Zimmerman.

## ISSUE 4

Did the District Court abuse its discretion when it allowed into evidence an audio taped deposition of a witness for the plaintiff?

At trial, over the defendants' objection, the District Court allowed an audio taped deposition of plaintiff's witness, Greg

14

Ramey. The basis for the objection was that the Montana rules regarding taped depositions had not been followed and that the deposition had been taken after the discovery cutoff deadline had passed. Rule 30(h)(4), M.R.Civ.P., sets forth the rules for video taped or audio taped depositions, and the defendants contend these rules were not complied with because the operator's name and business address were not stated on the taped part of the deposition; the tape was not indexed by a time generator or other adequate indexing device; and the original audio tape was not filed with the clerk of court. The defendants maintain these rules are mandatory and because they were not followed, the tape should not have been allowed.

The determination of the admissibility of evidence is within the broad discretion of the trial court, and we will not disturb the court's ruling absent a manifest abuse of this discretion. *Jacobsen v. State* (1989), 236 Mont. 91, 94, 769 P.2d 694, 695.

In this instance, the court allowed admission of the audio taped deposition despite the fact that certain requirements set forth in Rule 30(h), M.R.Civ.P., were not fully complied with. After reviewing the record, however, we conclude that there was no prejudice to the defendants resulting from the defects alleged. On this basis, we find no grounds to hold that the tape was inadmissible.

The procedural requirements of Rule 30(h), M.R.Civ.P., insure the accuracy and proper identification of a taped deposition. Here, however, the accuracy of the taped deposition was never

15

challenged. The objections raised during the trial went to substantive issues which were discussed by Ramey, and the defendants were afforded adequate opportunities during the trial to object and excise specific portions of Ramey's testimony. These portions of the tape were never heard by the jury. Furthermore, the objection that the tape did not technically comply with the rule was not raised until the day of trial, even though the deposition had been taken and was transcribed prior to this time. If the accuracy of the tape was genuinely questioned, this problem could have been brought to the court's attention prior to the day of trial.

We conclude that the District Court did not abuse its discretion when it allowed into evidence the audio taped deposition of Ramey.

### ISSUE 5

Did the District Court abuse its discretion when it allowed King to introduce evidence in support of claims which the defendants contend were not raised in the pretrial order?

The defendants finally contend that the District Court erred when it allowed plaintiff to present evidence at trial regarding issues of fact and law not set forth in the pretrial order. Specifically, they contend that breach of contract, breach of the covenant of good faith, conversion, and malice were not listed as issues. Also, punitive damages were not listed in the legal issues to be addressed. The defendants rely on *Zimmerman v. Robertson* (1993), 259 Mont. 105, 854 P.2d 338, for the proposition that testimony

16

regarding issues that are not contained in the pretrial order is irrelevant and inadmissible.

The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order. *Zimmerman*, 854 P.2d at 342. In *Zimmerman*, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purposes pretrial orders are intended to serve. Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth all of King's contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial.

The District Court did not abuse its discretion in this regard.

The judgment of the District Court is affirmed.

_____
Justice

17

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_William Hunt_

_Fred J. Weber_
Justices

August 1, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael G. Majerus
Attorney at Law
P. O. Box 7065
Billings, MT 59103

Brad L. Arndorfer
Attorney at Law
P. O. Box 412
Billings, MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy